35 and 36 of the education law. The plaintiff was not required to allege conversion by the defendant. The defendant, once an official, became an individual holder of the money, and was detaining it for its rightful owner, whereupon the plaintiff presented itself as such owner and sued after demand. There was no legal necessity for charging that the defendant's holding was tortious.

[3] The property belongs to plaintiff, and it was not constrained to submit the controversy to the decision of the commissioner of education. The duties and powers of such officer in such regard are stated in section 360 of the education law, and are similar to those vested in the superintendent of public instruction by title 14, c. 556, Laws 1894. The section enumerates the power of hearing and decision vested in the commissioner of education, and for its purposes grants an appeal or petition to the commissioner. But, as the statute vests the title of the property in the consolidated school district, it was not constrained, even if it be considered that it had the right to do so, to appeal to the commissioner for a final decision of the matter.

The judgment should be reversed and a trial of the action had, costs to abide the event. All concur.

═══════════════

GRIFFITH v. LONG ISLAND R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   December 28, 1911.)

1. NEGLIGENCE (§§ 122, 135*)—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.
   In an action for the wrongful death of plaintiff's intestate, plaintiff was bound to prove affirmatively her intestate's freedom from contributory negligence and was not entitled to go to the jury, unless the evidence not only warranted a fair inference that decedent had exercised reasonable care, but that such inference was the only one that could be reasonably drawn from the facts, there being no presumption of prudence or regard for safety, so that, where the evidence points as much to negligence as to freedom therefrom, the complaint should be dismissed.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 221–223, 274–276; Dec. Dig. §§ 122, 135.*]

2. CARRIERS (§ 333*)—DEATH OF PASSENGER—CONTRIBUTORY NEGLIGENCE.
   Decedent, a man of 46, in full possession of his faculties, went to defendant's station with friends to take an east-bound train to Rockaway Beach, going on defendant's east-bound platform. After standing on the platform a few moments, he decided to return home to the west, and for this purpose started to cross the east-bound tracks through a gate in a fence dividing the tracks to the platform of the west-bound station. When opposite the opening, he stepped from the platform to the track, and, as he passed over the second rail, he was struck by an east-bound train and killed. From the time he left his companions he was walking directly toward the approaching train, which could have been seen for 475 feet. There was evidence that, though there was no headlight, the station platform for a distance of more than 400 feet was lighted, and that the whistle was blown at that distance from the station. Held, that intestate was negligent as a matter of law, though there was evidence

from two or three witnesses who were paying no attention to the movement of trains that they heard no whistle.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1396–1397; Dec. Dig. § 333.*]

Appeal from Trial Term, Queens County.

Action by Jennie A. Griffith, as administratrix of Robert Yates, deceased, against the Long Island Railroad Company and another. From a judgment dismissing plaintiff's complaint, she appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

Franklin Taylor, for appellant.
William C. Beecher, for respondent Long Island R. Co.
D. A. Marsh, for respondent Brooklyn Union Elevated R. Co.

RICH, J. The plaintiff's intestate was killed by an electric express train at the Broad Channel station on the Rockaway trestle on the night of July 19, 1908. At the close of the evidence the complaint was dismissed as to both defendants, upon the ground that the plaintiff had failed to establish decedent's freedom from contributory negligence, the court further stating that as to the defendant Brooklyn Union Elevated Railroad Company the proof was insufficient to sustain a finding that the train causing the death of the plaintiff's intestate was under its management and control. From the judgment accordingly entered this appeal is taken.

[1] To establish a cause of action, it was incumbent upon the plaintiff to prove affirmatively freedom from contributory negligence of her intestate, and she was not entitled to have the case sent to the jury unless the evidence warranted the fair inference that the decedent had exercised reasonable care. Wiwirowski v. L. S. & M. S. R. Co., 124 N. Y. 420, 26 N. E. 1023; Ruppert v. Brooklyn Heights R. R. Co., 154 N. Y. 90, 47 N. E. 971; Wieland v. Delaware & Hudson Canal Co., 167 N. Y. 19, 60 N. E. 234, 82 Am. St. Rep. 707; Pinder v. Brooklyn Heights R. R. Co., 173 N. Y. 519, 66 N. E. 405. And it is further held that, not only must the evidence be such as to warrant and sustain such fair inference, but it must appear that the inference sought is the only one that can be reasonably drawn from the facts. Ruppert v. Brooklyn Heights R. R. Co., supra; O'Reilly v. Brooklyn Heights R. R. Co., 82 App. Div. 492, 81 N. Y. Supp. 572; Huff v. American Fire Engine Co., 88 App. Div. 324, 84 N. Y. Supp. 651. There is no presumption of prudence or regard for safety (Wiwirowski v. L. S. & M. S. R. Co., supra; Axelrod v. New York City Railway Co., 109 App. Div. 87, 95 N. Y. Supp. 1072; Wheeler v. Sundstrom & Stratton Co., 143 App. Div. 499, 128 N. Y. Supp. 355; Cordell v. N. Y. Central & Hudson R. R. R. Co., 75 N. Y. 330), and, where the evidence points as much in the direction of negligence as freedom therefrom, the complaint should be dismissed (Pinder v. Brooklyn Heights R. R. Co., supra).

[2] There is no direct evidence in the case at bar of the exercise of any care or prudence by the deceased or that he took any precautions for his own safety. The evidence upon this subject is that he was 46 years of age and, so far as appears, in the full possession of his faculties. At Broad Channel station where he met his death there are two tracks divided by a picket fence about five feet high, one used for east and the other for west bound traffic, each having a cement platform station. There is an opening in the fence opposite which on each side the track is planked between the rails, through which people could pass from the one station platform to the other. On the evening of the accident, the deceased, with several friends, went to the east-bound platform for the purpose of taking a train to Rockaway Beach. After standing on the platform a few minutes, the deceased said to one of his companions, Altreuter, "I think I will go home myself." At that time he was standing on the east-bound platform, about 100 feet east of the opening in the fence, towards which he immediately started, walking on the platform. To take a train for his home in Brooklyn, it was necessary for him to cross the track for the east-bound trains, pass through said opening, and cross the track for the west-bound trains to the opposite platform. When opposite the opening, he stepped from the platform to the track, and as he was passing over the second rail he was struck by an east-bound train and killed. From the time he left his companions he was walking directly towards the approaching train, which could be seen from the point where he left the platform, and from where he was struck, for a distance of at least 475 feet. The distance from the edge of the platform to the first rail of the track is 27 or 28 inches; the distance between the rails 4 feet 8½ inches. The deceased had not therefore proceeded more than 7 or 8 feet from the edge of the platform when he was struck by the train. There is no proof of the rate of speed of the train. It appears from the evidence that the train had no headlight, and its first car was not lighted owing to some trouble with the mechanism controlling the lights, and this fact is presented as the reason for the deceased not seeing and avoiding the train. This contention entirely overlooks the fact that the east-bound station platform extends west nearly to the toolhouse, and the train struck the deceased 475 feet east of the toolhouse; that there were lighted electric lights along the platform on both sides of the track, lighting it as one of the plaintiff's witnesses testified so that the train could be plainly seen as it came around the curve opposite the toolhouse. The conductor of the train testified that the whistle was blown 400 feet from the station. A whistle was heard by one of plaintiff's witnesses from the direction in which the train approached, and, on looking in that direction, he saw the approaching train. There is no evidence to the contrary, except that several witnesses who were giving no attention to the movement of trains testify that they did not hear a whistle. This testimony was insufficient to carry the case to the jury on that question. Foley v. N. Y. Central & H. R. R. R. Co., 197 N. Y. 430, 90 N. E. 1116. In addition, the noise of the train

was heard by plaintiff's witnesses who were standing on both the east and west bound platforms.

I think it appears that the deceased had ample warning of the approach of the train, that he either did, not look or listen at all, or, if he did, he ought to have seen and heard. When, as in the case at bar, the facts establish want of due care and precaution, and the existence of contributory negligence is plain, no inference or presumption of the exercise of due care is warranted. Baxter v. Auburn & Syracuse El. R. R. Co., 190 N. Y. 439, 83 N. E. 469.

The judgment must be affirmed, with costs. All concur.